*654 OPINION OF THE COURT
David Friedman, J.
Penal Law § 120.10 (4) provides that a person is guilty of the class C felony of assault in the first degree when "[i]n the course of and in furtherance of the commission or attempted commission of a felony * * * he * * * causes serious physical injury to a person”. The question presented here is whether aggravated unlicensed operation of a motor vehicle in the first degree (Vehicle and Traffic Law § 511 [3] [a] [ii]), a class E felony, may serve as the predicate felony for conviction of assault in the first degree under Penal Law § 120.10 (4) (felony assault). I conclude that it may not.
The issue arises in the context of an indictment filed September 18, 1995 in which defendant was charged with aggravated unlicensed operation of a motor vehicle in the first degree. This crime is defined in Vehicle and Traffic Law § 511 (3) (a) (ii) as follows:
"(a) A person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the first degree when such person * * *
"(ii) is operating a motor vehicle while such person has in effect ten or more suspensions, imposed on at least ten separate dates for failure to answer, appear or pay a fine, pursuant to [other provisions] of this chapter.”
This offense is classified as an E felony subject to a term of imprisonment as provided in the Penal Law (Vehicle and Traffic Law § 511 [3] [b]). Utilizing this offense as a predicate the People also sought and obtained a count in the indictment charging felony assault (Penal Law § 120.10 [4]).
Defendant now moves to dismiss the felony assault count on the ground that aggravated unlicensed operation of a motor vehicle in the first degree is not the kind of crime that the Legislature intended to serve as a predicate felony for purposes of felony assault. The People oppose the motion. They assert that any felony including commission of the felony of aggravated unlicensed operation of a motor vehicle may support a felony assault charge. They point to People v Fonseca (36 NY2d 133) where the Court held that any felony, whether violent or not, may serve as a predicate for conviction of felony assault.
While Fonseca (supra) is generally supportive of the People’s position, it is not determinative at bar. Close scrutiny of Fonseca shows that it does not hold that any felony may be a pred *655 icate for felony assault, but merely that a nonviolent felony may suffice. This conclusion as to the meaning of Fonseca is especially warranted when it is considered in conjunction with People v Snow (138 AD2d 217, affd 74 NY2d 671).
In Snow (supra) the Appellate Division held that driving while intoxicated (DWI), a Vehicle and Traffic Law felony (Vehicle and Traffic Law § 1192 [former (5)]), may not serve as the predicate for a conviction of felony assault. In so holding, the Court stated (at 220), "On the facts of this case, defendant could have been found guilty only of second degree vehicular assault, a class E felony (Penal Law § 120.03), because the victim of the incident suffered serious physical injury. Had the victim died defendant could have been convicted of second degree vehicular manslaughter, a class D felony (Penal Law § 125.12). Defendant, however, was convicted of first degree assault under Penal Law § 120.10 (4), a class C felony, a more serious crime than could have been charged if the victim had died. This is an unreasonable and unjust result and could not have been intended by the Legislature”.
Although the Court recognized that "as a general rule a prosecutor has discretion to prosecute under a general statute even where a more specific provision is available, that discretion may be limited by a legislative intention to make a specific statute the exclusive means of punishing particular conduct” (People v Snow, supra, at 219).
The Snow approach would thus seem to be intolerant of an indictment charging the instant defendant with felony assault. There is, however, another aspect to Snow (supra) which prevents concluding the matter without further discussion.
Snow (supra) observed that the legislative history behind the felony assault statute had its origin in the doctrine of constructive malice. This doctrine permitted the intent necessary to sustain a conviction of felony assault to be inferred from the intent to commit the underlying felony (People v Snow, supra, at 221; see, People v Spivey, 81 NY2d 356, 361). The felony of DWI charged in Snow, however, required no culpable mental state since its classification as a felony rested solely on the fact that there had been a prior DWI conviction within 10 years. Thus, to use that DWI as the predicate felony would run afoul of the doctrine of constructive malice. By contrast, aggravated unlicensed operation of a motor vehicle does contain a culpable mental state, namely, that while operating the vehicle defendant "know * * * or hav[e] reason to know” that his license is suspended, and that he has 10 prior suspensions occurring *656 on at least 10 separate dates (see, Vehicle and Traffic Law § 511 [1] [a]).*
Nevertheless consideration of the Vehicle and Traffic Law § 511 offenses of aggravated unlicensed operation of a motor vehicle and their legislative history juxtaposed with the statutes governing vehicular crimes indicates that the Snow approach is controlling here.
In 1985 the Legislature revamped section 511 of the Vehicle and Traffic Law so as to make aggravated unlicensed operation of a motor vehicle in the first degree a class E felony (L 1985, ch 756). In addressing the problem of drivers operating their vehicles with suspended licenses that was the highest level of criminality the Legislature saw fit to. impose. There was no provision adopted making such a driver subject to greater punishment if someone was seriously injured by him.
In 1993, in an effort to increase enforcement powers and penalties, the Legislature amended Vehicle and Traffic Law § 511. Among other things the Legislature increased the grading of a first offense (aggravated unlicensed operation of a vehicle in the third degree) from a traffic infraction to a misdemeanor (L 1993, ch 607, § 4). The Legislature did not, however, increase the grading of aggravated unlicensed operation of a vehicle in the first degree, which remained an E felony.
In enunciating its reasons for supporting the 1993 law the legislative memorandum indicated the following: "The tragic deaths and injuries of New Yorkers at the hands of suspended unlicensed drivers underscores the need for more effective and stronger laws to protect our citizens” (1993 McKinney’s Session Laws of NY, at 2701). Similarly, the Governor’s Memorandum issued upon approval of the bill stated, "The dangers posed by unlicensed drivers to pedestrians and other motorists * * * are well documented. Numerous deaths have been caused by these drivers * * * and there is an immediate need to increase * * * penalties in order to remove these drivers from *657 the roads” (1993 McKinney’s Session Laws of NY, at 2914). The Memorandum further provided that the proliferation of drivers driving with suspended licenses resulted, inter alia, because initial penalties were too low (ibid.).
What the foregoing reveals is that the Legislature — fully cognizant of the situation with these drivers and the hazards they pose — did not seek to increase penalties for Vehicle and Traffic Law § 511 crimes beyond an E felony. Rather the subject E felony was enacted as the applicable crime. Hence, punishment of a Vehicle and Traffic Law offender as a class C felon would appear to be in contravention of legislative intent. This conclusion is further supported by an examination of the specific Penal Law provisions governing vehicular crimes.
In this regard, vehicular manslaughter in the first degree — a class C felony (Penal Law § 125.13), vehicular manslaughter in the second degree — a class D felony (Penal Law § 125.12), vehicular assault in the first degree — a class D felony (Penal Law § 120.04), and vehicular assault in the second degree — a class E felony (Penal Law § 120.03), all require at a minimum that defendant act with criminal negligence. Hence, the Legislature of this State has indicated that criminal negligence operate as the minimum mens rea for purposes of vehicular crimes when there is otherwise no specific intent to cause injury or death.
Moreover, to permit the People to prosecute defendant for felony assault would create an untenable anomaly in the grading of these disparate vehicular offenses. The People by indicting defendant for felony assault have sought to subject him to punishment as a class C felon, the same level of criminality provided for commission of the crime of vehicular manslaughter in the first degree. To commit that crime the victim must have not only died as a result of criminal negligence, but the offender must have been driving while intoxicated and have had a suspended license for a prior DWI offense. Under the present indictment defendant would be guilty of a class C felony for causing injury (not death) while driving with a suspended license without the People even demonstrating that defendant was civilly negligent, let alone- criminally negligent.
It is apparent that the conduct involved in the commission of the crime of first degree vehicular manslaughter is far more serious than the conduct with which the instant defendant is chárged. Thus to allow defendant to be charged with a C felony of felony assault predicated upon the E felony of Vehicle and Traffic Law § 511 is an unreasonable result which could not have been contemplated by the Legislature.
*658 In view of the foregoing, the motion is granted to the extent of dismissing the second count of the indictment charging the defendant with assault in the first degree (CPL 210.30).

 Both aggravated unlicensed operation of a motor vehicle in the third and second degrees (Vehicle and Traffic Law § 511 [1] [a]; [2] [a] [iv]) require that the offender "know * * * or hav[e] reason to know” that his license is suspended. The definition of the offense in the first degree does not specifically include such requirement. This failure, however, appears to be an error in drafting. In fact, there is some indication that the drafters of the statute recognized the drafting error (see, Letters to the Editor, Drafting Problem Seen With Vehicle Law, NYLJ, May 18, 1994, at 2, col 6). Moreover, not only would the Penal Law itself appear to mandate that scienter he read into the statute (see, Penal Law § 15.15 [2]), but the instant indictment includes the "know * * * or hav[e] reason to know” language.